UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:16CV-P1-DJH-CHL

**YALE LARRY BALCAR,**                                                  **Plaintiff,**

v.

**KENTUCKY STATE REFORMATORY** *et al.*,                  **Defendants.**

**REPORT AND RECOMMENDATION**

This matter is before the undersigned on Plaintiff Yale Larry Balcar's *pro se* motions for immediate relief, which were referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B). The undersigned held a hearing on September 2, 2016. For the reasons that follow, the undersigned recommends that the motions be denied.

**I.**

Balcar, a convicted prisoner incarcerated in the Kentucky State Reformatory (KSR), filed a *pro se* 42 U.S.C. § 1983 complaint (DN 1) and supplemental complaint (DN 7) against KSR officers and employees.

On initial review of the complaint and supplemental complaint, the Court allowed the following claims to continue: the 42 U.S.C. § 1983 Eighth Amendment claims of excessive force and the state-law claims of assault and battery against Defendants Lt. Deanna Hawkins, Sgt. Kelley, Officer Porter, and Capt. Patrick Hawkins arising out of incidents occurring on December 13, 2015, and January 24, 2016; the § 1983 Eighth Amendment claim of deliberate indifference to safety and state-law claims of assault and battery against Defendant Warden Smith arising out of those same two incidents; the § 1983 Fourth, Eighth, and Fourteenth Amendment claims concerning a January 2016 strip-cell incident against Defendants

Lt. Deanna Hawkins and Capt. Patrick Hawkins; the § 1983 failure-to-train claim against Defendant CorrectCare; and the Americans with Disabilities Act claim against Defendant Warden Smith in his official capacity (DN 22).

Balcar filed three motions for preliminary injunctive relief (DNs 6, 15, and 24), which were referred to the undersigned. Defendants filed responses (DNs 11, 20, and 29), and Balcar filed replies (DNs 14 and 35).

On September 2, 2016, the undersigned held an evidentiary hearing on these motions. Participating in this hearing were Balcar, who represented himself, and Defendant KSR Warden Aaron Smith, who was represented by counsel Linda M. Keeton of the Kentucky Justice and Public Safety Cabinet. The Court heard arguments from Balcar and Defendants' counsel and testimony from Balcar and Defendant Warden Smith.

Thereafter, Balcar filed motions for immediate help regarding his claim asserted at the hearing that he was being denied a special medical diet and breakfast (DNs 41, 64, and 69). Defendants filed responses (DNs 47 and 59), and Balcar filed replies (DNs 49, 52, and 61).

## II.

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." O*verstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Accordingly, "[t]he granting or denial of a preliminary injunction is within the sound judicial discretion of the trial court." *Mason Cty. Med. Ass'n v. Knebel*, 563 F.2d 256, 260-61 (6th Cir. 1977).

> In determining whether to issue a preliminary injunction, the district court is required to consider four factors: (1) whether the movant is likely to prevail on the merits; (2) whether the movant would suffer an irreparable injury if

the court does not grant a preliminary injunction; (3) whether a preliminary injunction would cause substantial harm to others; and (4) whether a preliminary injunction would be in the public interest.

*Abney v. Amgen, Inc.*, 443 F.3d 540, 547 (6th Cir. 2006) (quoting *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cty.*, 274 F.3d 377, 400 (6th Cir. 2001)). These factors are not "rigid and unbending requirements," as there is no "fixed legal standard" in determining whether to issue an injunction. *In re: Eagle-Picher Indus., Inc.*, 963 F.2d 855, 859 (6th Cir. 1992); *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991) ("These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together.").

Although no single factor is controlling when determining whether a preliminary injunction should issue, the likelihood of success on the merits is often the predominant consideration. *See Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000) ("[A] finding that there is simply no likelihood of success on the merits is usually fatal."). Further, "the proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000); *accord Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) ("As a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal.").

Furthermore, "[d]espite the overall flexibility of the test for preliminary injunctive relief, and the discretion vested in the district court, equity has traditionally required such irreparable harm before an interlocutory injunction may be issued." *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 103 (6th Cir. 1982); *Cox v. Jackson*, 579 F. Supp. 2d 831, 854

(E.D. Mich. 2008) ("With respect to the harm factor, the harm that would result in the absence of the injunction must be irreparable, not merely substantial."). To establish immediate and irreparable harm there must be an actual, viable, presently existing threat of serious harm. *Mass. Coal. of Citizens with Disabilities v. Civil Def. Agency & Office of Emergency Preparednesss of Mass.*, 649 F.2d 71, 74 (1st Cir. 1981). The plaintiff must show that he "will suffer 'actual and imminent' harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006) (citation omitted). The injury must be of such imminence that there is a clear and immediate need for relief in order to prevent harm. *Wis. Gas Co. v. Fed. Energy Regulatory Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985).

### A. First Motion for Preliminary Injunctive Relief

In the complaint, pertinent to the relief requested in his first motion for preliminary injunctive relief, Balcar described an alleged assault on December 13, 2015, by KSR Defendants Lt. Deanna Hawkins, Sgt. Kelley, and Officer Porter. He claimed that on that date, Defendant Lt. Deanna Hawkins went to his cell door to read a write-up to him and that when he asked her how to file a harassment complaint against another corrections officer, "she lost her temper and push Balcar in his cell and started beating him with her Handcuff on his right hand 6-8 time until he was Bleeding and right hand was mark with Hand cuff mark." Then, claimed Balcar, Defendant Porter went into his cell and "put a choke Hole around plaintiff neck" and that Sgt. Kelley sprayed him with "OC Spray," even though he was cooperating. He claimed that he "fear[s] of Guard Assault and Beating at any time."

In the first motion for preliminary injunction (DN 6) and motion to file a supplemental complaint (DN 7) filed therewith, Balcar reported an incident on January 24, 2016, by Defendant

Lt. Deanna Hawkins and her husband Defendant Capt. Patrick Hawkins.  In the supplemental complaint, Balcar alleged that on that date, Defendant Lt. Deanna Hawkins, Defendant Capt. Patrick Hawkins, and the SWAT team went "to Plaintiffs' Cell Door and said cuff up or handicuff and Plaintiff ask what going on her and Lt Hawkin use a hole Big Can of OC spray on Plaintiff for no reason at all."  He continued that Defendant Lt. Deanna Hawkins "threaten Plaintiff and said I am going to kill Balcar with the OC Spray very soon."  Balcar, therefore, sought a preliminary injunction "against Defendants Lt. Deanne Hawkins and Capt Patrick Hawkins to ensure [his] safety and Protextion."

At the evidentiary hearing, the undersigned gave Balcar multiple opportunities to testify as to the claims raised in his preliminary-injunction motions. Balcar gave testimony, but he did not mention Defendants Lt. Deanna Hawkins and Capt. Patrick Hawkins.

Upon consideration of the matter, the undersigned concludes that Balcar has not met his burden of showing that a preliminary injunction should issue here.  First, although the Court on initial screening of the complaint and supplement pursuant to 28 U.S.C. § 1915A allowed the excessive-force claims against Defendants Lt. Deanna Hawkins and Capt. Patrick Hawkins to proceed for further development, Balcar has not offered evidence at this stage of the litigation proving that they used excessive-force against him.  Second, Balcar fails to offer credible evidence that he will suffer irreparable harm absent injunctive relief.  To be sure, the only a l l e g e d   incidents or threat of harm involving Defendants Lt. Deanna Hawkins and Capt. Patrick Hawkins  occurred well in the past, and Balcar has failed to allege, much less demonstrate, any continuing  threat of harm by these Defendants.  *See Laube v. Haley*, 234 F. Supp. 2d 1227, 1251 (M.D. Ala.  2002) ("The existence of a continuing constitutional violation constitutes proof of an irreparable

5

harm, and its remedy certainly would serve the public interest.") (quoting *Preston v. Thompson*, 589 F.2d 300, 303 n.3 (7th Cir. 1978)).

The undersigned, therefore, recommends that the first motion for preliminary injunctive relief (DN 6) be denied.

### B. Second and Third Motions for Preliminary Injunctive Relief

Balcar raises similar claims in both the second and third motion for preliminary injunctive relief (DNs 15 and 24). The undersigned, therefore, will address the motions together.

*Summary of Motions and Hearing*

In the second motion for preliminary injunctive relief (DN 15), Balcar seeks an "Order for Protection" and asserts as follows:

> Plaintiffs is and being Retaliation by All Defendants and other Guard. They are Threaten Plaintiff by Scare him away from continuing with Case above. In the past 30 Days Plaintiffs has been throw out of his wheel chair by Guard and their favor prisoners. Also I had receid verb threat by Guard they are plaining to kill Plaintiff if he do not drop this. Now they place me in segregation without cause. They are setting me up by a Prisoner[.]
>
> Plaintiff is tired of Assault on him daily. Assault Case. Which is False. Her in segregation they denied proper food or hygiene materials, and No Wheel chair or Handicap Cell and Shower for a handicap as Plaintiffs. They are trying to stop Plaintiff legal mail or intercepted them Refuse legal paper, Pen and Postage to this Court. They punish the Plaintiffs by place him in segregation untill he drop lawsuit. Plaintiff will fit this case to End of case. Plaintiff is being Mental or Emotional injury by All Defendants. <u>Daily Harms</u>.

In the third motion for preliminary injunctive relief (DN 24), Balcar asks the Court "To Stop Retaliation by the Guards and Warden Smith." Therein, he maintains as follows:

> Plaintiff Balcar is receiding Threat of death of his life daily by KSR officer and I am in feared another assault is coming. The guards are telling prisoners that I am starting trouble for them and they are going to Retaliation to them by Deprivation them of less food at their meals if they

> do not take plaintiff life or kill him. This is because of plaintiff civil Action he filed. . . . Now the guard and Warden Smith is working on a Plan to take plaintiff Wheel chair and put him Back in segregation. They are planning to kill him and take his wheel chair and put him in segregation to stop plaintiff Access to this Court and Now they have Order Aramark Food to cut Balcar Special Diet by 75% less food this deprivation of a life Necessity, violating of the Eight Amendment. They will not supply plaintiff his legal paper with line and No envople or free stamps. They are intercepted his legal mail and reading them and this is hurting plaintiff case.

Balcar seeks the following relief:

> All this Retaliation need to be stop. Need a Order for Protection Now and all retaliation to stop. No Order for them Not to take plaintiff wheelchair, and proper Handicap needs. Order them to stop denied proper special diet or denied food. Feed the plaintiff the right amout of Food. Order them to stop intercepted plaintiff legal mail. Order them to supply legal paper with line, Pen, Free envople and postage. Order them not to retaliation and not to be ship or put in segregation.

In response (DNs 20 and 29), Defendants ask the Court to deny preliminary injunctive relief because (1) wheelchair orders are issued by the medical staff, who are not parties to this action, and to date Balcar still has his wheelchair; (2) per medical records, Balcar's special diet order is issued and expires on a fairly regular basis, and his order was renewed when he brought the matter to the attention of the medical department; (3) all incoming mail is opened and examined for contraband, and privileged mail is opened in the inmate's presence and searched; (4) to receive extra paper, envelopes, and postage for outgoing mail, Balcar is required to sign a written money authorization for payment from his inmate account to be collected when the funds become available; (5) when he complains about retaliation, Balcar fails to make any type of factual allegations to support these claims and fails to name those individuals who are allegedly threatening him; and (6) when Balcar was placed in segregation, it was with sufficient cause based on disciplinary violations. Further, Defendants argue that inmates have no control over

their prison placement and that while Balcar complains of fearing for his life at KSR he does not want to leave as he asks "not to be ship or put in segregation."

During the hearing, Balcar filed a reply (DN 35) to his third motion for preliminary injunctive relief along with a list of names of officers (DN 38) that he claims have been threatening him "in the past two years" because of filing the instant action and Civil Action No. 3:15CV-P118-DJH.  Balcar claims that Defendants and other guards are retaliating against him by threatening to harm him, assaulting him, placing him in segregation for no reason, throwing him out of his wheelchair, denying him meals, not refilling his heart medicine, and paying an inmate to assault him.

At the hearing, Balcar testified that he is having trouble with retaliation at KSR by Defendant Warden Smith and his staff, in that they are tampering with his legal mail and are trying to stop or lose his legal mail and deny him access to the court.  He also testified that Defendant Warden Smith and non-Defendant Aramark are retaliating against him by denying him food and his special diet since he filed this case, that he feels he is being harassed by Internal Affairs (IA) trying to learn information about this case to try to use against him or to falsify records.  Balcar further testified that since he filed his first lawsuit, 3:15CV- P118-DJH, "on July 24th, 2014, till this date, I've had retaliation by staff, guards, and all of them threatened to cause harm, threatened to kill me.  They have assaulted me.  They have throw me out of my wheelchair.  I've been throwed in sick" and received a write-up for an assault on an officer.  In addition, Balcar testified that he was afraid that after the hearing, Defendant Warden Smith or his guards might try to retaliate and try to place him "in sick or put me in protective custody, which I did not want.  I want to stay in general population where I can get . . . my witness depositions or their statements" for the next step in litigation.  Finally, Balcar testified

8

that he has a special diet for allergies and that "KSR do[es] not have a breakfast menu for me that they can feed me, and they are denying me breakfast because they don't have nothing to substitute. My lunch and supper meal, they try to do the best they can, limited what Aramark can do to try to substitute my diet." Balcar testified that he had not been receiving breakfast for about six to eight months. He stated that non-Defendant Chad Hart, an Aramark worker, said, "'Look, we cannot tailor to your special diet needs so just quit coming to breakfast because we won't have nothing for you.'"

Defendant Warden Smith testified that after his counsel talked to him about Balcar's motions for preliminary injunctive relief, he (Warden Smith) contacted IA Captain Williams. He testified, "There were a lot of things that I had not heard, was not familiar with that Mr. Balcar was asserting. And so I asked Captain Williams to interview him . . . because a lot of these things centered around misconduct by staff, which obviously is an important thing." He indicated that Captain Williams "did not conclude that there was any information that would lead to an investigation of any specific staff member." Defendant Warden Smith further testified that he was aware that Balcar has a special diet but was not aware that Balcar was not getting breakfast. In light of this information, the undersigned directed Defendant Warden Smith to investigate the breakfast matter as soon as possible and to take immediate steps to remedy the situation if Balcar was not being fed breakfast.

### *Analysis*

In both his second and third motions for preliminary injunctive relief, Balcar raises claims related to those alleged in the complaint and supplemental complaint. Additionally, in both motions and at the hearing, he asserts new claims unrelated to the continuing claims in this

action. The undersigned first will address those claims related to those alleged in the complaint and supplemental complaint.

*1. Related Claims*

Balcar makes broad claims of daily assaults, threats of harm, and threats of being returned back to segregation with removal of his wheelchair and denial of "proper Handicap needs." These claims are lacking in the specificity needed to warrant preliminary-injunctive relief.

In his filings, Balcar mentions only brief periods of time during which he was placed in segregation and did not have access to his wheelchair or to handicap cell or shower. Defendants indicated in a response that Balcar was placed in segregation with sufficient cause based on disciplinary violations, and they attach disciplinary reports. Balcar has not offered any testimony or evidence contradicting Defendants' arguments, and he had access to his wheelchair at the hearing.

In addition, at the hearing, the undersigned directed Balcar on multiple occasions to provide testimony he wanted to offer in support of his motions. Balcar did not testify to impending assaults and threats of harm or specify who was currently harming/threatening to harm him or going to harm him in the immediate future. Instead, he primarily focused on claims unrelated to his asserted request for protection from KSR officers, which was the reason that the hearing was held. While Balcar filed a list at the hearing containing names of those individuals he claims have harmed him or have threatened to harm him, his claims therein are not detailed, and the allegations occurred in the past with Balcar providing no facts or testimony showing actual, imminent harm. Even despite alleging assaults and threats by KSR guards occurring on a daily basis, Balcar does not want to be transferred away from KSR or to be placed in protective

or other administrative custody but wants to remain in general population at KSR. Further, Defendant Warden Smith testified that once he found out about Balcar's claims of threats and harm, he contacted IA to investigate the claims.[1]

While a court is to accept factual allegations raised in a complaint as true, *see Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) ("[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true."), the same leniency does not apply to a motion for preliminary injunctive relief, which requires proof that is greater than required on summary judgment. *See Leary v. Daeschner*, 228 F.3d at 739. By Balcar not even mentioning at the hearing any specific threats of continuing harm by any specific individual, the undersigned concludes that he fails to offer credible evidence that he "will suffer 'actual and imminent' harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d at 552.

For these reasons, the undersigned recommends that the second and third motions for preliminary injunctive relief be denied as to the claims related to those alleged in the complaint and supplemental complaint.

## 2. New Claims

In his second and third motions for preliminary injunctive relief and in the evidentiary hearing, Balcar raised and argued numerous claims that he did not raise in his complaint and supplemental complaint. These new claims include claims of various forms of retaliation

---

[1] At the hearing, Plaintiff argued that the IA officer interviewed him to harass him and to learn information about his case to use against him. To that end, Plaintiff filed a motion about the interview and indicated at the hearing that he wanted to add the claim against IA Captain Williams to the action. The undersigned, therefore, construed his filing as a motion to amend (DN 39) the complaint and allowed normal response and replies times. By Memorandum and Order entered September 6, 2017 (DN 84), the district court denied Plaintiff's motion for leave to amend.

(including threats/assaults, placement in segregation with removal of his wheelchair, interference with legal mail, denial of legal paper/pens/postage, denial of breakfast/his special diet, and refusal to refill medication) for filing the instant action and Civil Action No. 3:15CV-P118-DJH and also include the following three claims he raised and focused on during the hearing: denial of breakfast/his special diet, denial of access to courts, and alleged falsification of records by Defendant Warden White and non-Defendant IA Captain Williams.

A court, however, may not grant a preliminary injunction when the issues raised in the motion are entirely different from those raised in the complaint. *See Kaimowitz v. Orlando*, 122 F.3d 41, 43 (11th Cir. 1997); *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997); *Stewart v. United States Immigration and Naturalization Serv.* 762 F.2d 193, 199 (2d Cir. 1985). "'[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint.'" *Colvin v. Caruso*, 605 F.3d 282, 300 (6th Cir. 2010) (quoting *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994)). "This is because '[t]he purpose of interim equitable relief is to protect the movant, during the pendency of the action, from being harmed or further harmed in the manner in which the movant contends [he] was or will be harmed through the illegality alleged in the complaint.'" *Id.* (quoting *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d at 16).

Thus, because Balcar's claims of retaliation, denial of breakfast/his special diet, denial of access to courts, and falsification of records are not properly before the Court, they provide no basis for the issuance of a preliminary injunction in this action. Further, the undersigned advises

that Court records show that Balcar has filed two actions regarding his special medical diet,[2] an action regarding denial of access to courts and interference with legal mail,[3] and an action alleging retaliation.[4] Nevertheless, because at the hearing the undersigned directed Defendant Warden Smith to ensure Balcar was getting breakfast and appropriate meals, the undersigned will discuss the claim of denied breakfast/his special diet.

Following the hearing, Balcar filed motions seeking relief regarding his special diet (DNs 41, 64, and 69). In his first post-hearing motion (DN 41), Balcar claims under penalty of perjury that he was still being deprived his "proper special diet" and breakfast, that his meals were being cut by 75%, and that Aramark workers told him that they can override orders and can feed him as little food as they want. In response (DN 47), Defendants indicate that after Defendant Warden Smith became aware of Balcar's complaints about not receiving breakfast, the matter was addressed and resolved because breakfast fitting the parameters of Balcar's allergy diet is being provided to him every day and that while Balcar does not like the food selections for his special diet, the food conforms to his special allergy diet. Defendants provide an affidavit from Jon Matthew Jerger, Aramark Food Service Director at KSR, who avers that Aramark has been accommodating and continues to accommodate Balcar's medical diet for

---

[2] *See Balcar v. Smith et al.*, Civil Action No. 3:16CV-P428-DJH (dismissed Jan. 26, 2017; aff'd on appeal and mandate issued Aug. 8, 2017); *Balcar et al. v. Aramark et al.*, 3:17CV-P327-GNS (pending). Additionally, in the instant action, Balcar filed an amended complaint (DN 53) claiming that he had not had breakfast for several months and was not getting his evening snack. By Memorandum and Order entered September 6, 2017 (DN 83), the district court construed Balcar's amended complaint as a motion to file a supplemental complaint and denied the motion because the food claims have no relation to the claims permitted to proceed on initial review of the complaint and first supplemental complaint.

[3] *See Balcar v. Smith et al.*, Civil Action No. 3:16CV-P54-CRS (claim regarding denial of access to courts dismissed on initial review pursuant to 28 U.S.C. § 1915A(b)(1) and claim regarding legal mail continuing).

[4] *See Balcar et al. v. Ky. State Reformatory et al.*, Civil Action No. 3:17CV-P355-TBR (alleging retaliation by threatening him from continuing his legal work/suit and depriving him of meals).

breakfast, lunch, and dinner and that food meeting the dietary guidelines set by the medical staff for Balcar have been available to him for each meal.  Defendants assert that meals adhering to an inmate's dietary requirements are delivered to inmates in segregation but that general population inmates are required to go to the dining area for their meals.  Thus, argue Defendants, while Balcar is in general population, his meals are not delivered to him; he chooses whether to go to the dining area; and if he misses breakfast or any other meal, it is because he chooses to do so.  Balcar filed a reply (DN 49) under penalty of perjury, alleging that Aramark employees, Chad Hart and Mr. Jerger, are refusing him breakfast and proper meals for his special diet and asks the Court "to order his Special Diet with Almound milk and Ceral for Breakfast, the right amount of food on his tray at each meals, and his Evening Snack that was Order by his Doctor."

In his second post-hearing motion (DN 64), which was not signed under the penalty of perjury, Balcar alleges that Chad Hart ordered his staff not to feed Balcar his medical diet at breakfast; that "[t]hey lied about the Breakfast Record that said I am eating Breakfast"; that Balcar goes to the dining facility for breakfast but is turned away without breakfast; and that "Aramark said that plaintiff need to buy his Breakfast at the canteen."  Balcar also filed a third post-hearing motion (DN 69).  The motion is short and bare in allegations and arguments, with Balcar only asking for relief of being provided his medical diet.  Defendants did not file a response to either the second or third post-hearing motion.

While there is dispute over whether Balcar was receiving, being refused, or refusing breakfast for a period of time in the past, the undersigned finds that Balcar fails to provide credible evidence of a likelihood of success on the merits of his claim of being denied breakfast/his special diet and of irreparable harm if not provided the relief requested.

"The deprivation of life's necessities, such as food or water, can constitute a claim under the Eighth Amendment, but the withholding of meals, while it may result in some discomfort to the prisoner, does not result in a health risk to the prisoner sufficient to qualify as a 'wanton infliction of pain' where the prisoner continues to receive adequate nutrition." *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (citation omitted). Here, Balcar broadly complains of inadequate nutrition or a decrease in portions. He raised similar complaints in *Balcar v. Smith et al.*, Civil Action No. 3:16CV-P428-DJH, wherein he complained that he was being served unhealthy, inadequate, and unsanitary food by Aramark, has food allergies, and has a right to a nutritious diet that complies with the "special diet" ordered by his doctor. In dismissing the action on initial review under 28 U.S.C. § 1915A for failure to state a claim upon which relief may be granted, the Court held, in part, as follows:

> Here, Plaintiff has not alleged that he suffered any serious medical consequence as a result of the diet he has been served at KSR. And, although Plaintiff does claim that this diet is nutritionally inadequate, he [has] not provided any allegations which support this claim. To show inadequate nourishment, courts typically require evidence of a connection between the challenged diet regimen and substantial weight loss. *See, e.g., Sweeting v. Miller*, 2015 U.S. Dist. LEXIS, at *8 (holding no Eighth Amendment claim where inmate claimed special allergy diet had caused weight loss but had provided no evidence of the severity of his weight loss); *Witschi v. N.C. Dep't of Pub. Safety*, No. 1:14-cv-68-FDW, 2014 U.S. Dist. LEXIS 103300, at *7 (W.D.N.C. July 29, 2014) (finding no Eighth Amendment claim despite plaintiff's allegation that he was not being fed a sufficient diet that complied with medical orders because he did not allege facts suggesting that his health had deteriorated as a result of his diet regimen); *Kemp v. Drago*, No. 1:12-1481-JFA-SVH, 2013 U.S. Dist. LEXIS 113430, at *21 (D.S.C. July 15, 2013) (holding that "Plaintiff's allegation of a seventeen-pound weight loss does not state a cognizable claim" of inadequate nourishment); *Escalante*, 2011 U.S. Dist. LEXIS 81382 at *9 (allowing inmate to proceed to trial on his food allergy claim where the record showed he had lost over 34 pounds as a result of his challenged diet order).

In affirming on appeal, the Sixth Circuit Court of Appeals concluded,

> This is not a case where food and nutrition were withheld entirely, which can be a violation of the Eighth Amendment. *See Cunningham v. Jones*, 567 F.2d 653, 656, 660 (6th Cir. 1977). Moreover, Balcar did not indicate that the diet he was provided and the food that he had eaten caused any reaction or serious medical issues. Therefore, the district court properly determined that he failed to state a constitutional claim regarding the defendants' failure to supply him with food in accordance with a special diet.

(Appeal No. 17-5159).

The same rationale applies here. Balcar has not demonstrated that he has suffered any serious medical consequence as a result of the diet he is being served at KSR and fails to show a likelihood of success on the merits of a constitutional claim. Additionally, in a more recently filed action, *Balcar et al. v. Aramark et al.*, 3:17CV-P327-GNS, Balcar indicates in his verified complaint that he receives "Two Poultry Patties" at breakfast. His acknowledgment of receiving breakfast along with his failure to show any consequence of the diet he is receiving both show the lack of irreparable harm.

The undersigned, therefore, recommends that Balcar's request for preliminary injunctive relief regarding breakfast/his special diet be denied.

## III. Conclusion

For these reasons, the undersigned recommends that Balcar's first motion for preliminary injunctive relief (DN 6) be **DENIED**; that his second and third motions for preliminary injunctive relief (DNs 15 and 24) be **DENIED**; and that his post-hearing motions regarding his alleged denial of breakfast/his special diet (DNs 41, 64, and 69) be **DENIED**.

## Notice

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations. A copy shall forthwith be electronically transmitted or mailed to all parties. 28 U.S.C. § 636(b)(1)(C). Within **fourteen (14) days** after being served, any party may serve and file specific written objections to these findings and recommendations. *Id.*; Fed. R. Civ. P. 72(b)(2). Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal. *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985). A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of the objections. Fed. R. Civ. P. 72(b)(2).

Date:

cc:     Plaintiff, *pro se*
       Counsel of record
44AS.005